May it please the Court, my name is James O'Brien. I am representing Ms. Murray in this appeal in the Social Security case. It is my desire to try to address three points in today's argument. The first is to be able to discuss the situation at step three of the sequential process of the five-step sequential process. The second topic I want to address is the deficient credibility findings by the Administrative Law Judge. And underlying this thematically is the failure to develop the record. Is that your third point? Yes, it is. In addressing the listing impairment at step three, an Administrative Law Judge is required to determine whether a combination of severe impairments meets or exceeds that of a listed impairment. Our focus today is on 1.04A as it was at the time of the hearing. And we really are focused on the difference between, in the regulation it talks about the nerve root compression. The facts before this Court is an undisputed compression. And if you are familiar with the anatomy, nerve roots are those tissues that come out of the spinal column. And cord compression is in fact the spinal cord compression. We take the position that there is a combination of impairments which meets or exceeds that which is in the regulation. I'm going to interrupt you just a second, Mr. O'Brien. Are you talking about the condition of Murray pre-op or post-op? Actually both. Pre-op, there was plenty of imaging studies and a need for surgery. But don't we have to concentrate on post-op? In post-op, you will find there are MRI reports that talk about, first off, a determination that the fusion was not complete because the screws were loosed which was suggestive of continued collapse. Also, there are MRI reports and imaging studies showing that there is ongoing collapse. And when I turn toward the distinction between nerve root compression and cord compression, we've discussed in the briefing that the signs of cord compression are very equivalent at times to that of nerve root compression. Counsel, where in the medical are equal? I would refer the court to the certificate, excuse me, the certified record at pages 350 through 351, 642 to 643. And I make these references in the opening brief at pages 20 and 21. What is there in those pages that states that cord compression equates to nerve root compression? That's the difficulty I have with your argument. I understand the court's question. And the answer to that is I am not making the argument that somewhere in the medical record a medical provider said there is an equivalency between cord compression and nerve root compression. I do make the argument that when one delves into 104A, the lower upper extremity numbness, sensory loss, which is well documented in the record post-surgery, and one of the errors that the administrative law judge made was only to focus in on the lower extremities. In any part of his decision, he's talking about there's no proof that she because you can have sensory loss, as Stacy has, bilaterally, and he failed to take into account that undisputed medical record. Sensory loss is done by pinprick sensation, correct? Yes. Doesn't the adverse credibility finding injure that? Well, the problem with the adverse credibility, he is not a physician, and the fact is the medical records demonstrate the tremor in the left hand, demonstrate the loss of sensation in both upper arms, and the fact is that was never actually considered by the administrative law judge because he was clearly focused on the lower extremities. So when we talk about the thematic idea of the duty to develop the record, it was incumbent upon the ALJ, if he did not flat-out accept the testing of the upper extremities, that he had an obligation to develop that record if there were any questions. What is wrong with the adverse credibility finding? The adverse credibility finding does not comport with Brown v. Hunter, which requires a direct tie-in between the testimony found to be disbelieved to some of the, you have to test it against the medical record. If he's never examining upper extremity limitation sensory loss, he's never performing his job to actually comply with Brown v. Hunter. Well, counsel, the ALJ doesn't examine anything. The ALJ looks at the medical record and from that medical record makes a determination, and we have to, our task is to determine whether or not that ruling is supported by substantial evidence in the record. And so tell us why the determination that the Well, it is, again, coming back to the point that we were trying to make, is the magic phrase, nerve root compression, is not in the record. We acknowledge that. But the phrase compression, core compression, is in the record. And when we look at the record, if there is an equivalency between this anatomical condition, she has a fused neck, there's going to be restriction of motion, there's going to be this bilateral upper extremity loss, we urge the court to consider under Zedley that the condition of the expression of her core compression condition is equivalent to a nerve root The counsel, the missing link is there's nothing in the record that establishes that equivalency. You're asking us to make that determination. That's not a determination that we are tasked with making. Our sole function is to see whether or not the determination that was made is supported by substantial evidence. So you're asking us to do the ALJ's job. I don't wish the court to do that. I do think that the ALJ had an obligation to actually discuss the issues in the medical record to determine the equivalency. And if he fails to do that, then he has a duty to develop the record. In this case, he in fact failed to do that. He failed to look at the upper extremity expression of the core compression that Stacy was facing. Mr. O'Brien, you gave me two citations to the record, both of them for our 2016 records. Do you have a citation to a post-op record showing MRI ongoing collapse? I believe they will be found between 349, 350, 352, 353, and 643, 642. Elsewhere in the briefing, I also cited two pages at 1,000, I think it's 42, and 1,043. But many of those citations are within the briefing. At this time, I have 30 seconds. I guess I'll reserve that, Your Honor. Thank you, counsel. We'll hear from the government. Thank you, Your Honor. Good morning, and may it please the court. Daniel Talbert on behalf of the Acting Commissioner of Social Security, Kilolo Kijikazi. The ALJ's findings of fact in this case are a reasonable interpretation of the record, substantial evidence supports those findings, and the decision is free of reversible legal error. So this court should affirm the decision finding Ms. Murray not disabled. As we've been discussing already this morning, Ms. Murray alleged disability based primarily on her neck impairment or cervical spine impairment. But the record shows, and the ALJ's decision reflects, that after the claimant's surgery in February 2017, which was less than a year after her amended alleged onset date, she experienced some fairly good relief of her symptoms, and her objective examinations thereafter showed that she was functioning fairly well. She usually had normal range of motion in her neck. A couple of times she didn't, but she normally had normal range of motion. She always had normal motor functioning. She didn't have any weakness, and she generally had normal sensation as well. She was also able to stop fairly aggressive medications, and she was able to engage in activities inconsistent with her allegations, and inconsistent with disability. Turning to some of the points that my friend has focused on already in terms of the listing, I'll just point out that, first of all, he's working on kind of an equivalency theory. He's acknowledging that Ms. Murray does not meet every single element of the listing. And the listings are hard to meet. They're set at a high level of severity, and if you don't have exactly what they call for, like in this case nerve root compression, then you can't meet the listing. You could equal it if you present a certain plausible theory of equivalency, but the claimant certainly didn't do that at the ALJ level, and really hasn't done that here either. I think the main element that... Yes, Your Honor. Yes. The ALJ had sort of a boilerplate finding. The medical evidence does not include evidence of nerve root compression, spinal arachnoditis, or lumbar spinal stenosis, but Murray's records, even post-op, show radiculitis, radiculopathy, and neuroforaminal narrowing. Why isn't that contrary to the ALJ's findings? So, Your Honor, it's not contrary because they don't specifically show nerve root compression, and MRIs will sometimes state, as my friend noted here, they noted cord compression. MRIs will sometimes note compression of nerve roots, you know, an exiting nerve root at a certain level or something like that. The MRIs here don't say that at any point. But radiculitis is well known to be caused by nerve root compression. What other cause is there for radiculitis other than nerve root compression? Well, I am not a medical expert. Well, if you've tried a few of these cases, as I have, that's why I ask you. Come up with an explanation for radiculitis, which is not nerve root compression. Sure, Your Honor. I mean, I know that that refers to sort of an inflammation of a root, and then the radiculopathy is a disease process or something of a nerve root. Whether it's caused by compression of the spine or not, I can't state here if there are other possible pathologies, other possible causes for it. I will say... Shouldn't we send this back to the ALJ to tell us exactly what he finds in the record that shows that there was no nerve root compression in view of the neuroforaminal-narrowing radiculopathy and radiculitis? So I would say my first response, Your Honor, would be we shouldn't send it back because the claimant has the burden to prove that she has every element of a particular listing. And even if we assumed that, which I am not conceding, but even if we assumed that she had the compression of the nerve root, which I think she's conceded she doesn't have, but even if she was able to prove that, she would have to satisfy the other elements too. And she doesn't have those. She certainly doesn't have those on a consistent basis. What other elements does she not have as a matter of law? She does not have weakness. Let me read it exactly on here if I may, Your Honor. She does not have motor loss, which is atrophy with associated muscle weakness or muscle weakness. She doesn't have that at any point. And she also doesn't consistently have limitation of motion of the spine, and she does not have consistent sensory or reflex loss. Counselor... So she really falls far... Yes, Your Honor, I'm sorry. Is a pinched nerve the same as a nerve compression? My medical knowledge is being tested here very much, Your Honor. I'm just curious... I'm sorry. I'm just curious because I'm not sure along the continuum where a pinched nerve would fit with the listing because a pinched nerve could be or could be not nerve compression. I don't know, but that's one definition of radiculopathy. So I'm not sure that it necessarily means nerve compression. If it's a pinched nerve, I don't know either, and that's why we leave it to the physicians to make those calls instead of us making those calls. Yes, I agree, Your Honor, and I think that since we don't have any physician here, we don't have anybody who looked at this record and said that the claimant had any of the underlying elements or the required elements for that listing. The state agency consultants that looked at this record didn't consider Ms. Murray to meet or equal a listing. We just don't have any doctor who's offered that, and I'll go back to the fact that it's the claimant's burden to show that she meets every element of it, and she hasn't done that here. Another thing I wanted to point out was that Mr. O'Brien had argued that the ALJ was focused only on the claimant's lower extremities, only on her legs. That's not accurate. The ALJ does talk at some length about what's going on with the claimant's upper extremities, her arms, her hands, et cetera. He notes on pages, I think this is especially 23 and 24 of the administrative record, he noticed that she was alleging bilateral numbness in her arms. But then he noted afterwards that she had intact strength. He noted that she had normal sensory findings despite alleging continuing numbness on April 2018 and different points in time. And I would point out that that also rebuts my friend's argument that the ALJ ran afoul of Brown-Hunter. So 2018 was before her fusion, wasn't it? No, I guess it wasn't. No, Your Honor. You're right, you're right. The fusion was in 2017, that's right. That's correct, Your Honor, yes. And I just wanted to clarify there that the ALJ's findings there satisfy any duty under Brown-Hunter versus Colvin for the ALJ to look at what's the claimant alleging and then comparing it to the record. So he's done that. He's discharged that duty fully. Okay. I'm happy to answer any other questions the panel might have on this case, but barring any immediate other questions or anything like that, I want to just emphasize, going back to the issue of the listing that we've been talking about mostly here, that, again, it's the claimant's burden to prove that she has every element of the listing. She has not proven that. She's offered some speculation at different points, but no really plausible theory about how her impairments and the symptoms and limitations would meet or equal every single element. She certainly didn't present that to the ALJ. She hasn't presented it on appeal either. And to the extent that there may be other possible interpretations of the record, that there may be something going on with some nerve roots or the cord or other things, the claimant hasn't packaged any of that into a cogent theory that the court could really evaluate and on which the court could remand or on which the ALJ would have been required to make more detailed findings about an equivalency theory. So this court should reject those arguments, should look over the record as a whole and the ALJ's decision as a whole and see that the ALJ accounted for the claimant's functioning, considered her treatment, considered her activity level, and made reasonable findings that after the surgery, she didn't need the hydrocodone anymore. She was able to do beet harvesting. She was able to drive a truck. She was able to have fairly normal physical examinations. It was a reasonable interpretation of this record to say that she wasn't per se disabled at the listings level in Step 3 and also to find that she could perform a limited range of light work, which was consistent with non-disability. The commissioner asks the court to affirm the ALJ's decision, and if there are no further questions, I'll rest on the briefs. Thank you, counsel. Rebuttal? Thank you, Your Honor. I would want to address earlier questions. Other citations to the record include cervical radiculopathy at pages 575 and 576. We've talked about that. I'm sorry? We've talked about that. Okay. And there are elsewhere in the record. I would disagree that the court should go down the road proposed by the Social Security Administration simply because you're being invited to speculate as to the conclusions the ALJ made. It doesn't matter that it was earlier discussed in depth. We have a one-sentence line under the consideration of the listing impairment, just one sentence about there's no nerve root compression. While we concede that's not a medical record, it doesn't alleviate the obligation from the ALJ to consider the additional problems posed by equivalency. Mr. O'Brien, do you agree with your learned friend that there are other elements under 1.04a other than nerve root compression, such as motor loss, atrophy limitation, and sensory loss, as to which evidence is absent? We think that there is positive evidence of sensory loss, and through the record there is also perhaps reflex loss. Post-op. Pardon? Post-op. Post-op. And there's some evidence of left-sided, I'll say, tremoring, which is also post-op. So that may involve the reflex losses as well. Motor loss and atrophy? No. I do not present to you that I know of motor loss or atrophy. Aren't those elements that are required under 1.04a? They're not exclusive. They're among a body of other neurological effects that can relate. You are not in agreement with your learned friend that these are essential elements each and every one. I am not in agreement with him. Thank you. Do you have a case to support your argument that to meet a listing, you weigh the elements as opposed to having to meet every single one of them? What case is that? I think Zebley, Sullivan v. Zebley, is a case that the Court should examine for the language that was introduced by the Supreme Court in considering what should be found. For a listing, to meet a listing? Yes. Did you cite that in your brief? Actually, my colleague cited it in his brief, which led me to then incorporate that in my reply brief. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case, Guerrero v. Garland, has been submitted on the briefs as has Calderon v. Garland.
judges: RAWLINSON, BEA, SUNG